UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>             Plaintiff,<br>      v.<br><br>1ST ALLIANCE LENDING, LLC, JOHN DIIORIO, KEVIN ST. LAWRENCE, and SOCRATES ARAMBURU,<br><br>             Defendants. | Case No. 1:22-mc-91581 |

**MEMORANDUM IN SUPPORT OF NON-PARTY KEVIN CUFF'S, IN HIS CAPACITY AS DEPUTY COMMISSIONER OF THE MASSACHUSETTS DIVISION OF BANKS, MOTION TO QUASH DEPOSITION SUBPOENA AND FOR PROTECTIVE ORDER**

### I.      INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 45 and 26, non-party Kevin Cuff, in his capacity as Deputy Commissioner of the Massachusetts Division of Banks ("DOB"),[1] moves to quash the deposition subpoena and for a protective order against the deposition subpoena directed to Kevin Cuff in his capacity as Deputy Commissioner of the DOB, attached as *Exhibit A*.  The subpoena was issued in connection with the matter currently pending in the United States District Court for the District of Connecticut, *Bureau of Consumer Financial Protection v. 1st Alliance Lending, LLC, et al*, Case Number 3:21-CV-00055-RNC, which centers around the alleged activities of the Defendants' employees that allegedly violated federal law, including claims of conduct violating Regulation Z, the Equal Credit Opportunity Act, and whether certain employees were required to be licensed as Mortgage Loan Originators (MLOs) under the Secure

---

[1] Mr. Cuff and the DOB acknowledge that Defendants seek to depose Mr. Cuff in his capacity as Deputy Commissioner of the DOB, but submit that Defendants essentially are seeking a Fed. R. Civ. P. 30(b)(6) deposition of the DOB without describing with reasonable particularity the matters for examination and accordingly this memorandum will refer to Mr. Cuff as "DOB" throughout.

and Fair Enforcement for Licensing Act (SAFE Act), among other claims. *Exhibit B*. The United States District Court for the District of Connecticut (Richardson, M.J.) previously denied Defendants' motion to compel responses to a document subpoena from non-party Connecticut Department of Banking because Defendants failed to establish that the documents sought between the Connecticut Department of Banking and Plaintiff were relevant and more importantly found that the documents were protected by the deliberative process privilege. In turn, Defendants now disregard the law of the case and seek to instead obtain deposition testimony from a different state's department of banking, regarding conversations that purportedly took place with 1st Alliance employees.

As fully set forth *infra*, there is no substantial need for Defendants to conduct Mr. Cuff's deposition in his capacity as Deputy Commissioner of the DOB because his anticipated testimony is not relevant to any claims and/or defenses, the information sought, to the extent it exists, can be more easily obtained through party discovery, requiring Mr. Cuff to appear at any deposition would subject him and the DOB to an undue burden and good cause exists to enter a protective order protecting non-party DOB from irrelevant discovery. Hailing a non-party, state official in a matter pending in a different district to testify about privileged and irrelevant topics would set a dangerous precedent.

Thus, DOB respectfully requests that this Court enter an order quashing the subpoena requiring Kevin Cuff in his capacity as Deputy Commissioner of the DOB to appear for a deposition and enter a protective order precluding any further discovery directed to the DOB.

## II.      BACKGROUND

### a.      Summary of Allegations in First Amended Complaint

The Consumer Financial Protection Bureau ("CFP Bureau" and/or "Plaintiff") alleges

that 1st Alliance is a non-depository mortgage company that originated mortgages in 46 states

and from approximately 2015-2019 allowed unlicensed employees to engage in "mortgage-

origination activities and interactions with customers that required employees to be licensed

under the applicable state laws, in violation of the Truth and Lending Act [15 U.S.C. § 1601 et

seq] and Regulation Z [12 C.F.R. § 1206]."  *Exhibit B, ¶¶1-2.*  The CFP Bureau further alleges,

among other allegations, that at the times relevant to the Complaint, "every state and District of

Columbia had in force a state 'SAFE Act' requiring mortgage-origination organizations such as

1st Alliance to ensure that each person working for it who originated loans was licensed.  Each

such state SAFE Act was enacted pursuant to the federal SAFE Act, 12 U.S.C. § 5101, *et seq*."

*Id.*, *¶ 22.*  The CFP Bureau further alleges 1st Alliance did not require certain employees "to

hold mortgage-originator licenses in states where a residential property was to be mortgaged"

and "[i]n most, if not all, cases" certain 1st Alliance employees "were not licensed in any state."

*Id.*, *¶ 23.*

The CFP Bureau alleges the claims against Defendants are brought under the Consumer

Financial Protection Act, Mortgage Acts and Practices – Advertising Rule, the Truth in Lending

Act, the Fair Credit Reporting Act, and the Equal Opportunity Act and "Federal consumer

financial law."  *Exhibit B, ¶¶ 7.*[2]  The Amended Complaint is silent as to any specific allegations

involving the Commonwealth of Massachusetts and/or the DOB.  *See*, *e.g.*, *Exhibit B*.

---

[2] The CFP Bureau's claims are: (1) Regulation Z – Failing to Ensure that Loan Originators Were Licensed (against 1st Alliance) (*Exhibit B*, *¶¶ 63-73*); (2) Regulation Z – Requiring Consumers to Submit Verifying Documents Before Providing a Loan Estimate (against 1st Alliance) (*Id.*, *¶¶ 74-76*); (3) Deceptive Mortgage-Origination Acts or Practices (against all Defendants) (*Id.*, *¶¶ 77-91*); (4) Unfair Mortgage-Origination Acts (against all Defendants)

b.      **Background on DOB**

The DOB is the chartering authority and primary regulator for financial service providers

in Massachusetts.  DOB's primary mission is to ensure a sound, competitive, and accessible

financial services environment throughout the Commonwealth.  In addition to supervising and

examining nearly 140 state-chartered banks and credit unions, the DOB licenses and supervises

over 14,000 non-depository licensees including mortgage lenders, mortgage brokers, mortgage

loan originators, consumer finance companies, money services businesses, debt collectors, third

party loan servicers, and student loan servicers.  These organizations are regularly examined for

financial safety and soundness as well as compliance with various consumer protection laws and

regulations.

c.      **First Rule 45 Subpoenas to DOB and Connecticut DOB**

Defendants previously served Fed. R. Civ. P. 45 documents only subpoenas on both the

DOB and the Connecticut Department of Banking ("Connecticut DOB"), the corresponding state

banking agency in Connecticut.  *Exhibit C*.  Both Rule 45 document subpoenas sought

essentially the same documents.  *Id.*  Both agencies produced some documents while also filing

timely objections on the grounds of relevance, privilege and other grounds.  *Exhibits D and E*.

The Defendants filed a motion to compel responses to a Rule 45 document subpoena from the

Connecticut DOB, but not the DOB.  The United States District Court for the District of

Connecticut (Richardson, M.J.) denied Defendants' motion to compel, as the documents sought

were irrelevant, and even if they were not, the documents and information were protected by the

---

(*Id.*, ¶¶ *92-107*); (5) Deception Regarding the FHA Streamline Program (against all Defendants) (*Id.*, ¶¶ *107-115*);
(6) Mortgages Acts and Practices Rule (against 1st Alliance) (*Id.*, ¶¶ *116-123*); (7) Equal Credit Opportunity Act
(against 1st Alliance) (*Id.*, ¶¶ *124-127*); (8) Fair Credit Reporting Act (against 1st Alliance) (*Id.*, ¶¶ *128-130*); and
(9) CFPA Violations Based on Violations of Federal Consumer Financial Law (against 1st Alliance) (*Id.*, ¶¶ *131-
134*).

deliberative process privilege. *See Exhibit F*.[3]  After Defendants chose not to file a motion to compel regarding the first Rule 45 subpoena directed to DOB and arguably waiving any argument, instead they seek to burden the DOB and elicit deposition testimony on topics that were already rejected and deemed irrelevant by the District of Connecticut.  *Id*.

### d.     Second Rule 45 Subpoena Seeking Mr. Cuff's Deposition

On October 20, 2022 (two months after the Court deemed the documents sought from the Connecticut DOB as irrelevant) Defendants served a Rule 45 deposition subpoena on Kevin Cuff in his capacity as Deputy Commissioner of the DOB.  *Exhibit A*.  The DOB and Defendants conferred about the deposition subpoena, explained both sides respective positions, and Defendants were not willing to withdraw the deposition subpoena.  *Exhibit G*.  Defendant's counsel stated, among other things:

> I do want to emphasize that we have significant questions for Mr. Cuff concerning undisputedly non-privileged conversations that took place <u>after</u> 1st Alliance had surrendered its license. Additionally, I note that Connecticut conceded at the hearing on the motion to compel that state examination privilege would not defeat a motion to compel in federal court under federal question jurisdiction. Rather, Connecticut's relevance objection to 1st Alliance's subpoena was based on completely different circumstances, which are not applicable here. Namely, Connecticut contended that it had produced so many documents in the Connecticut enforcement proceeding that any remaining documents were, in its view, not relevant.
>
> **Both the CFPB's stated grounds on which it plans to seek summary judgment on Count I, and Defendants' affirmative defense concerning the doctrine of primary jurisdiction, make the testimony that we would seek directly relevant.** Moreover, as I indicated, any objections to specific questions are not ripe until those questions are posed, and we are confident that the foundation we would lay for those questions would leave no doubt that there is no valid privilege objection to any of them.

---

[3] On September 1, 2022 Defendants filed an Objection to the Magistrate Judge's August 18, 2022 order denying the motion to compel.  No decision on that objection has been issued as of the time of filing.

*Exhibit G (emphasis added).* There is no need to seek discovery from a non-party where Defendants already possess the putative information they seek. Defendants' argument that the deposition testimony is relevant to their primary jurisdiction defense is unavailing and the offered reasons for deposing the DOB fail to meet the required relevancy standards as fully explained below. Defendants' deposition subpoena must be quashed and a protective order should enter.

### III.    LAW AND ARGUMENT

#### a.    The Court Must Quash the Deposition Subpoena

Fed. R. Civ. P. 45(d)(1) provides "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) provides:

> On timely motion, **the court for the district where compliance is required <u>must</u> quash or modify a subpoena** that:
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

(emphasis added). "[A] Rule 45 subpoena must comport with Fed. R. Civ. P. 26(b)(1), the 'information sought ... must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible or reasonably calculated to lead to the discovery of admissible evidence.'" *See Gattineri v. Wynn MA*, LLC, No. 18-CV-11229-FDS, 2021 WL 8648783, at *1 (D. Mass. Aug. 25, 2021) (Cabell, M.J.) (internal citations omitted); *see also In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at

*4 (D. Mass. Nov. 13, 2013) (Boal, M.J.) (internal citation omitted) ("A Rule 45 subpoena must fall within the scope of proper discovery under Fed.R.Civ.P. 26(b)(1).").

The DOB is not a party to this matter and should not be dragged into a discovery dispute that was already decided by the District of Connecticut and be further required to submit to a deposition seeking irrelevant and privileged testimony.  "[C]oncern for the unwanted burden thrust upon non-parties [from discovery] is a factor entitled to special weight in evaluating the balance of competing needs." *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (internal citations omitted).  "While the [Fed. R. Civ. P. 26(b)(1) generally permits liberal discovery of relevant information… the scope of discovery is not unlimited, and the court must restrict discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,] or is outside the scope of discovery permitted by Rule 26(b)(1)." *See Cates v. Zeltiq Asethetics, Inc.*, No. CV 20-MC-91234-NMG, 2020 WL 5517457, at *3 (D. Mass. Sept. 14, 2020) (Kelley, Chief M.J.) (internal quotations and citations omitted).  Any irrelevant and non-privileged information Defendants seek from the DOB, as previewed in their earlier documents only subpoena to the DOB, is outside the scope of permissible discovery and can easily be obtained by Defendants themselves.

### b.   The Deposition Subpoena is an Attempt to Circumvent the United States District Court for the District of Connecticut.

The United States District Court for the District of Connecticut (Richardson, M.J.) already denied Defendants' attempt, after briefing and oral argument, to compel responses to a documents only subpoena from non-party Connecticut DOB:

> The Court DENIES defendants' Motion to Compel Responses to Rule 45 Subpoena. (Dkt. # 75 .) Defendants have not established how the documents sought from non-party Connecticut Department of Banking

("DOB") are relevant. **The vast majority of the documents defendants seek include internal communications within the DOB, communications between the DOB and plaintiff, and communications between the DOB and other state banking agencies.** (Dkt. #75-2 at 16-21.) Defendants argued in their brief and at the hearing that these documents are relevant to show the context of plaintiff's enforcement action against the individual defendants. The DOB argued that the requested documents are not relevant to the enforcement action brought by plaintiff. <u>**The relevant conduct is defendants conduct, not the regulatory agencys conduct.**</u> <u>Plaintiff further argues that even if the requested documents are relevant, they would be protected by the deliberative process privilege. This Court agrees.</u> While defendants argue that "[t]he Individuals have a compelling interest in the underlying facts, decision-making, and coordination that resulted in [the defendants] being named in this litigation when they were not in the state litigation," it is not information that the DOB can provide; it was plaintiff's decision to bring an enforcement action against the individual defendants, and the DOB's records do not reveal plaintiff's decision. (Dkt. #75-2 at 8.) **The Court finds that even if the documents are relevant, the agency communications are privileged. "In order for a document to be protected by deliberative process privilege, it must be: (1) an inter-agency or intra-agency document; (2) 'predecisional'; and (3) deliberative." Tigue v. U.S. Dep't of Just., 312 F.3d 70, 76 (2d Cir. 2002).** The communications at the heart of defendants' motion to compel meet all three of these criteria; they are communications between the DOB internally or other agencies regarding defendants' conduct prior to the DOB Commissioner issuing his findings of fact and conclusions of law that defendant 1st Alliance, LLC violated Connecticut law. See The Department of Banking News Bulletin - Bulletin #2982 - Week Ending April 16, 2021, State of Connecticut Department of Banking, https://portal.ct.gov/DOB/Bulletin/2021/Bulletin-2982-April-16-2021.

*Exhibit F* (emphasis added). Despite the District of Connecticut (Richardson, M.J.) finding that documents from Defendants' own state's Division of Banks were not relevant, Defendants now attempt to flank the law of the case and take deposition testimony from the neighboring DOB on purported conversations that occurred with certain Defendants. *See Exhibit G.* There is no need to seek discovery from a non-party where Defendants already possess the putative information. Defendants could not establish relevancy for documents from Division of Banks in the state where this action is pending, yet somehow claims deposition testimony from a different state's

division of banks is relevant to defend claims arising under federal law. The deposition

subpoena is simply an attempt to force the DOB to submit to a deposition and testify regarding

already-established privileged, irrelevant topics. The District of Connecticut's (Richardson,

M.J.) decided this area of inquiry is not relevant, and even if it were, it would be privileged. *See*

*Exhibit F*. This Court should follow, and for the same reasons, quash the deposition subpoena

directed to the DOB.

        c.        **Information Shared or Communicated with Other State Regulators Concerning Any Examination-Related Matters Is Privileged under the Federal SAFE Act and State Law**

      As fully set forth below, the areas of inquiry Defendants seek to depose the DOB on are

privileged and the DOB should not be compelled to sit through a deposition seeking privileged

testimony.

        *1.*     *Massachusetts Examination Privilege*

      M.G.L. ch. 255E, § 8 and M.G.L. ch. 255F, § 14, respectively, provide a self-executing

statutory privilege preventing the record of a mortgage lender or broker examination conducted

pursuant to M.G.L. ch. 255E, § 8, or the record of a mortgage loan originator examination

conducted pursuant to M.G.L. ch. 255F, § 14, from being disclosed or admitted into evidence. In

enacting the statute, the Massachusetts Legislature further provided that the reports of

examination are confidential communications which are not subject to a subpoena and do not

constitute public records within the meaning of M.G.L. ch. 4, § 7(26). *Id*. The privilege extends

not only to the actual examination reports, but also to the full record of examination, including

"workpapers, information derived from the reports or responses to the reports and any copies of

the records in the possession of any licensee under the supervision of the commissioner."

M.G.L. ch. 255E, § 8 and M.G.L. ch. 255F, § 14.

Further, the privilege extends to examination records of investigation and reports of examinations conducted by any bank regulatory agency of the federal government and any other state, and of any foreign government which are considered confidential by such agency or foreign government and which are in possession of the Commissioner. *Id.* Moreover, the DOB Commissioner may "enter into agreements or relationships with other government officials or regulatory associations in order to improve efficiencies and reduce regulatory burden by sharing resources, standardized or uniform methods or procedures, and documents, records, information or evidence." *Id.* The privilege therefore encompasses examinations undertaken in coordination with other states exercising their confidential supervisory examination authority, as well as to communications concerning information derived from the examination or related to the examination between and among financial regulatory agencies of different states and the federal government.

There are significant and well-established policy reasons for the Massachusetts Legislature's decision to enact a statutory privilege and impose confidentiality requirements on a bank and licensee examiner's records and related communications. Likewise, numerous federal courts have recognized an "unbroken custom [that] reports of bank examiners [are] regarded as privileged." *See Bank of Am. Nat. Trust & Sav. Ass'n v. Douglas*, 105 F.2d 100, 103 (D.C. Cir. 1939); *see also*, *Merchants Bank*, 205 B.R. 37, 42 (D. Vt. 1997) (the bank examiner privilege "is intended to protect the integrity of the regulatory process by privileging such communications"); *In re Bankers Trust Co.,* 61 F.3d 465, 471 (6th Cir. 1995) ("The primary purpose of the privilege is to preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions"). To the extent that the Defendants would seek to depose Mr. Cuff regarding examination-related communications with

other states, this information is also privileged under Massachusetts law and the federal SAFE

Act.  *See* 12 U.S.C. § 5111.  The SAFE Act makes it clear that Congress, in enacting the Act,

sought to ensure that coordination and sharing of information between the state mortgage

regulators would be encouraged and that doing so would not impact the confidential and

privileged nature of such information under state law.  In doing, so Congress essentially

incorporated applicable state law privileges into the federal statute.  Likewise, the Massachusetts

legislature adopted the same language in M.G.L. ch. 255F, § 13.

      The public policy of the Commonwealth, as expressly reflected in the language of

M.G.L. ch. 255E, § 8 and M.G.L. ch. 255F, § 14, is that information regarding a licensee

examination, including the examiner's report and associated documents and communications, is

absolutely privileged and confidential, and Defendants attempts to depose the DOB on these

topics should be quashed.

      **2.**        **The State Privilege Applies**

      "[T]he case law in this district indicates that federal courts should adopt state evidentiary

privileges in appropriate situations in accordance with the governing test set forth by the First

Circuit in In re Hampers, 651 F.2d 19 (1st Cir. 1981)."  *See United States ex rel. Banigan v.*

*Organon USA Inc.*, No. CV 07-12153-RWZ, 2013 WL 12437578, at *1 (D. Mass. Oct. 8, 2013)

(Zobel, J.) (internal citations omitted).  Under the analysis in *In re Hampers*, 651 F.2d 19, 22 (1st

Cir. 1981), the first inquiry is "whether the courts of Massachusetts would recognize such a

privilege."  As set forth above, a court in Massachusetts would apply the statutory privilege set

forth in M.G.L. ch. 255E, § 8 (applicable to examination and supervisory information related to a

licensed mortgage lender) and M.G.L. ch. 255F, § 14 (applicable to examination and supervisory

information related to licensed mortgage loan originators).  Further, in adopting its own version

of the SAFE Act, the Massachusetts legislature also adopted the pertinent language of the SAFE Act in M.G.L. ch. 255F, § 13 with regard to the confidentiality of information that may be shared with other state mortgage regulators.  Both the SAFE Act and Massachusetts law provide that any requirement under Federal or State law regarding the privacy or confidentiality of any information or material provided to the Nationwide Multistate Licensing System, thus any privilege arising under federal or state law with respect to such information or material, shall continue to apply to such information or material after the information or material has been disclosed to other state or federal mortgage industry regulators.  *See* 12 U.S.C. § 5111(a).  It also provides that any state law, including any state open record law, is superseded to the extent that a stronger provision exists.  *See* 12 U.S.C. § 5111(c); M.G.L. ch.  255F, § 13.  To the extent that the deposition would seek examination related information, including any communications with other regulators regarding examination matters, based on the above, the DOB satisfies the first prong of the *In re Hampers* analysis.

"Next, the court should consider four factors: 1) whether the communications originate in a confidence that they will not be disclosed; 2) whether the element of confidentiality is essential to the full and satisfactory maintenance of the relations between the parties; 3) whether the relationship is one which ought to be sedulously fostered; and 4) whether the injury that would result to the relation by the disclosure of the communications would be greater than the benefit gained for the correct disposal of litigation." *Degrandis v. Children's Hosp. Bos.*, 203 F. Supp. 3d 193, 196 (D. Mass. 2016) (Kelley, M.J.) (*citing In Re Hampers*, *supra* at 23-24).  The DOB satisfies all four prongs.  For the first prong, communications within the DOB regarding examination information is cloaked with an express statutory privilege and those communications with state regulators expressly retain their privileged and confidential nature.

*See* M.G.L. ch. 255E, § 8; M.G.L. ch. 255F, § 13-14; 12 U.S.C. § 5111.  Regulators have the full expectation that their supervisory communications and deliberations will not be disclosed, particularly in litigation between parties in a different state.  As to the second prong, candor in the regulatory process is essential, both between the regulated parties as well as between regulators themselves.  If the sanctity of the DOB's examination privileges were weakened by permitting disclosure, regulators of other states would undoubtedly be forced to limit the regulatory information they could therefore share with the DOB.  If such communications were subject to disclosure, effective regulation of financial services providers in order to protect the Commonwealth's consumers would be impossible.

For the third prong, the examination privilege is a longstanding privilege, first borne out of the bank examination context and expressly adopted to apply to examinations of financial services providers operating in the mortgage lending space, thus the confidential nature of communications between examiners and financial regulators strongly supports the conclusion that this is a relationship that must be "sedulously fostered."  *See Hampers*, 651 F. 2d at 23.  As to the fourth prong, the injury to the DOB in potentially being forced to disclosed privileged information would be far greater than the privileged information that has already been deemed not relevant by the District of Connecticut.  *See In re Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F. Supp. 2d 386, 392 (D. Mass. 2005) (Saris J.) ("government should not be Hampered in its investigation so long as it shows the documents sought could likely be relevant").

The DOB satisfies all prongs under the analysis set forth in *In Re Hampers*, and the Court should adopt the state privileges and quash the deposition subpoena.[4]

---

[4] Federal courts have recognized an analogous bank examiner privilege.  *See Bank of Am. Nat. Trust & Sav. Ass'n*, *supra*; *see also Merchants Banks*, *supra*; *In re Bankers Trust Co.*, *supra*.  The Massachusetts Supreme Judicial

### 3.     Deliberative Process Privilege

For the sake of judicial economy, DOB respectfully refers to the law of this case and

incorporates the District of Connecticut's analysis that the anticipated topics in the DOB's

deposition would be protected by the deliberative process privilege.  *See Exhibit F.*

### d.     DOB's Testimony Would Be Irrelevant to Defendants' Primary Jurisdiction Affirmative Defense.

Defendants claim that "Defendants' affirmative defense concerning the doctrine of

primary jurisdiction, make the testimony that we would seek [from DOB] directly relevant."

*Exhibit G.*  "As the First Circuit has noted, 'the primary jurisdiction doctrine permits and

occasionally requires a court to stay its hand while allowing an agency to address issues within

its ken.'"  *Palmer Foundry, Inc. v. Delta-HA, Inc.*, 319 F. Supp. 2d 110, 112 (D. Mass. 2004)

(Posnor, J.) (*citing United States Public Interest Research Group, et al. v. Atlantic Salmon of

Maine, LLC*, 339 F.3d 23, 34 (1st Cir. 2003), *citing Ass'n of Int'l Auto. Mfrs. v. Comm'r Mass.

Dep't of Envt'l Prot.*, 196 F.3d 302, 304 (1st Cir. 1999) and 2 Pierce Administrative Law Treatise

§ 14–1 (4th ed.2002)).  The primary jurisdiction doctrine "requires the court to enable a 'referral'

to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek

an administrative ruling."  *Palmer Foundry, Inc.*, *supra* at 113 (internal citations omitted).  "It is

invoked 'whenever enforcement of the claim requires the resolution of issues which, under a

regulatory scheme, have been placed within the special competence of an administrative body…'

Under the doctrine, a court will decline to decide an issue which is best left to the expertise of an

---

Court, in considering the analogous bank examination privilege language set forth in M.G.L. ch. 167, § 2, declined to release confidential supervisory information that had been impounded during litigation between a bank and the Commissioner, holding such information was confidential and privileged and not a public record.  *See Ottaway Newspapers v. Bass River Savings Bank*, 372 Mass. 539 (1977).

administrative agency." *Am. Tel. & Tel. Co. v. IMR Cap. Corp.*, 888 F. Supp. 221, 244 (D.

Mass. 1995) (Gertner, J.) (internal citation omitted).

Defendants cannot invoke the doctrine of primary jurisdiction and the DOB's testimony

is not relevant to Defendants' purported affirmative defense. *See Exhibit H, p. 11*.[5] 1st Alliance

already raised this argument in its motion to dismiss, and the District of Connecticut denied the

motion, stating, in regards to the primary jurisdiction argument:

> This argument is unavailing. TILA, as amended by the Dodd Frank Act,
> provides in part that "[s]ubject to regulations prescribed under this
> subsection, each mortgage originator shall
> . . . be qualified and, when required, registered and licensed as a mortgage
> originator in accordance with applicable State or Federal law, including
> the Secure and Fair Enforcement for Mortgage Licensing Act of 2008." 15
> U.S.C. § 1639b(b). And TILA directs the Bureau to "prescribe regulations
> to carry out the purposes of [TILA]," which "may contain such additional
> requirements, classifications, differentiations, or other provisions . . . as in
> the judgment of the Bureau are necessary or proper to effectuate the
> purposes of [TILA], to prevent circumvention or evasion thereof, or to
> facilitate compliance therewith." 15 U.S.C. § 1604(a). **In other words, in
> order for a mortgage originator to be qualified in compliance with
> TILA, it must also comply with requirements promulgated by the
> CFPB. One such requirement obligates loan originator organizations
> to ensure that individual loan originators working for them are
> licensed or registered as required by state and federal laws.**
> This requirement is clearly authorized by the statutory grant of authority –
> if loan originator organizations were allowed to employ unlicensed loan
> originators to do work that requires a license under state and federal law,
> TILA's requirement that mortgage originators comply with state and
> federal licensing requirements would lack efficacy.

---

[5] Defendants' first affirmative defense states:

> Counts 1 and 2 of the Amended Complaint are barred by the doctrine of primary
> jurisdiction.1st Alliance was examined by 34 state agencies between 2010 and 2019
> while operating the same business model with no citations for SAFE Act violations for
> call center employee activities.The CFPB's claim that state SAFE Act laws were violated
> in those states is inconsistent with the findings of the agencies who have specialized
> knowledge of their own SAFE Act provisions. Those state agencies have primary
> jurisdiction to regulate and enforce their own SAFE Acts, and the CFPBis barred from
> attempting to supersede the states' authority by overturning their determinations.

*Exhibit I* (emphasis added).  After failing to prevail at both the motion to dismiss and motion to compel stage, Defendants improperly attempt to resurrect this rejected defense through deposition testimony from a non-party, after the alleged conversations took place with Defendants.  This Court should follow the District of Connecticut and quash Defendants' deposition subpoena.

   **e.**  **Good Cause Exists to Issue A Protective Order.**

  "Fed. R. Civ. P. 26(c) allows a court to issue an order 'to protect a party [or any person from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense[.]'"  *See Cates, supra* at *2 (citing Fed. R. Civ. P. 26(c)).  "The party seeking the order has the burden of demonstrating 'good cause' for it."  *Id.* (internal citations omitted).  "'Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. . . . The "good cause" standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case.'"  *See Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005) (*quoting United States v. Microsoft Corp.*, 334 U.S. App. D.C. 165, 165 F.3d 952, 959-60 (D.C. Cir. 1999)).  "[T]his court is endowed with 'broad discretion' under Rule 26(c) 'to decide when a protective order is appropriate and what degree of protection is required.'"  *See Kaiser v. Kirchick*, No. 21-10590-MBB, 2022 U.S. Dist. LEXIS 68162, at *3 (D. Mass. Apr. 12, 2022) (Bowler, M.J.) (internal citations omitted).

  As fully explained above, deposing the DOB is "neither materially important to resolve the issues nor crucial to [Defendants'] case."  *See Kaiser*, *supra* at * 2.  Plaintiff already provided "all 'documents and ESI provided to the Bureau' by a state agency or the Multistate Mortgage Committee, as set forth in the CFPB's initial disclosures" in response to requests by Defendant.

*See Exhibit J, Request and Response Number 2*.  Although it is unknown to DOB, as a non-party, whether any documents produced by Plaintiff involved the DOB, Defendants would presumably have any information concerning the DOB from Plaintiff.  The DOB is not a party to this matter, and should be spared the undue burden and expense of forced participation when Defendants can obtain the information, to the extent it exists, from a party.  Further, Defendants' claims the need to depose Mr. Cuff concerning purported conversations between Mr. Cuff and Defendants.  Without knowing the specifics, it would appear Defendants already have this information, and deposing non-party DOB is cumulative and unnecessary.  Balancing the interests between non-party DOB and Defendants favors DOB.  *See Solamere Cap. v. DiManno*, No. 22-MC-91197-ADB, 2022 WL 3154551, at *1 (D. Mass. Aug. 8, 2022) (Cabell, M.J.) ("the burden on Solamere as a nonparty to produce this more limited discovery outweighs any likely benefit under Rule 26(b)(1).").  Requiring Mr. Cuff, a non-party and a state official, to provide irrelevant discovery in a case pending in a different district that does not involve the Commonwealth would set a dangerous precedent, and a protective order should enter precluding any further discovery directed to the DOB.

Accordingly, the Court should enter a protective order preventing the deposition.

## IV.     CONCLUSION

For the reasons set forth above, Kevin Cuff in his capacity as Deputy Commissioner of the Massachusetts Division of Banks respectfully requests that the Court grant his motion to quash and issue a protective order to prevent non-party discovery from Kevin Cuff, in his capacity as Deputy Commissioner of the Massachusetts Division of Banks.

Respectfully submitted,
Kevin Cuff, in his capacity as Deputy
Commissioner of the Massachusetts
Division of Banks,
By his attorneys,

*/s/ Allison M. O'Neil*
*/s/ William E. Gildea*
Allison M. O'Neil (BBO# 641330)
William E. Gildea (BBO# 699112)
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA  02108
617.239.0100
allison.oneil@lockelord.com
william.gildea@lockelord.com

Dated: November 9, 2022

## CERTIFICATE OF SERVICE

I certify that on November 9, 2022, this document was filed through the ECF System of the United States District Court for the District of Massachusetts and will be served electronically on the Registered Participants in the action pending in the United States District Court for the District of Connecticut, *Bureau of Consumer Financial Protection v. 1st Alliance Lending, LLC, et al*, Case Number 3:21-CV-00055-RNC.

*/s/ William E. Gildea*
William E. Gildea

130284298v.1